# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIM. NO. 3:09-CR-398 |
| v. | (JUDGE CAPUTO) |
| MATTHEW NESTOR, and JAMIE GENNARINI. | |
| Defendants. | |

## MEMORANDUM

Presently before the Court are various motions by Defendant Matthew Nestor and the Government. Defendant Nestor's motions include a motion to dismiss (Doc. 51), a motion for bill of particulars (Doc. 52), a motion to produce Grand Jury minutes (Doc. 55), and a motion for release of *Brady* materials (Doc. 57.) The Government has made a motion to preclude the use of a claim of right defense by Matthew Nestor and co-defendant Jamie Gennarini (Doc. 63.)[1] For the reasons discussed in this opinion, Defendant's motions will be granted in part and denied in part, and the Government's motion will be granted in part and denied in part.

## BACKGROUND

On December 10, 2009, the Grand Jury indicted Defendant Nestor on two counts of conspiracy under 18 U.S.C. §1951, five counts of extortion under 18 U.S.C. §1951, one count of corrupt persuasion under 18 U.S.C. §1512(b)(3), one count of conspiracy under 18

---

[1] The Government filed a second motion to preclude certain defense. *See* (Doc. 64.) This motion appears to be a duplicate of the motion presently before the Court (Doc. 63.) The duplicate motion (Doc. 64) is therefore denied as moot.

U.S.C. §241, and one count of deprivation of Constitutional rights under 18 U.S.C. §242. The Grand Jury also indicted Defendant Gennarini on one count of conspiracy under 18 U.S.C. §1951, two counts of extortion under 18 U.S.C. §1951, one count of conspiracy under 18 U.S.C. §241, and one count of deprivation of Constitutional rights under 18 U.S.C. §242. The indictment ("Indict.") alleges the following:

The Shenandoah Police Department is a law enforcement agency tasked with investigating crimes committed in Shenandoah, a town in Schuylkill County, Pennsylvania. Employees of this department are responsible for conducting themselves in compliance with federal, state, and local laws. Defendant Nestor was, at times relevant to his indictment, this department's Chief of Police. Defendant Jamie Gennarini was, at such relevant times, a captain in the department. (Indict. at 1, Doc. 1.)

From 2004 until about September 17, 2007, in Shenandoah, Pennsylvania and the Middle District of Pennsylvania, Defendant Nestor conspired to people known to the grand jury to knowingly obstruct, delay, and affect commerce and the movement of articles in commerce by extortion. Defendant Nestor conspired to obtain property not due to him with the consent of Person # 1, Person # 2, Person # 3, and others, under color of official right. (Indict. at 2.)

As part of the manner, means, and object of the conspiracy, Defendant Nestor and others entered into a scheme to extort cash payments for profit from bookmakers in Shenandoah who were engaged in illegal gambling. Defendant Nestor and others would use Nestor's status as Chief of Police to carry out the extortion scheme. In 2004, Participant # 1, a bagman for Defendant Nestor, approached bookmakers at establishments in Shenandoah and threatened them into making cash payments to Defendant Nestor, or else

2

Defendant Nestor would use his authority to arrest the bookmakers. Beginning in 2004 and continuing through 2007, Participant # 1 collected these weekly cash payments and Defendant Nestor arranged with his co-conspirators for Participant # 1 to deliver the payments to Participant # 2, a middleman in the scheme. Participant # 1 and Participant # 2 would retain small chunks of cash for themselves before paying Defendant Nestor. During the scheme, the Shenandoah Police Department took no enforcement action against the local bookmakers. (Indict. at 2-3.)

In furtherance of the conspiracy, in 2004, Defendant Nestor met with Participant # 1 and Participant # 2 at the garage belonging to Participant # 2 in Schuylkill County to discuss the scheme. (Indict. at 3-4.) At Defendant Nestor's direction, Participant # 1 met with Person # 1 and threatened his illegal gambling establishment into making payments to Defendant Nestor or suffer the exercise of Defendant Nestor's authority as Chief of Police. Participant # 1 also perpetrated this behavior against Person # 2 and Person # 3. On July 28, October 30, and November 3 of 2006, and January 11, 18, and 25 of 2007, Participant # 1, on behalf of Defendant Nestor, went to the establishment of Person # 1 and collected cash from three illegal gambling operations. (Indict. at 4-5.)

On May 17, 2007, in Shenandoah, Pennsylvania and the Middle District of Pennsylvania, Defendants Nestor and Gennarini conspired to knowingly obstruct, delay, and affect commerce and the movement of articles in commerce by extortion. Defendants conspired to obtain property not due to Defendants from Person # 4, Person # 5, and others, under color of official right. (Indict. at 8.) As part of the manner, means, and object of the conspiracy, Defendants Nestor and Gennarini entered into a scheme to extort cash payments from Person # 4, a businessman, and his family. Defendants used their status as

3

police officers to carry out the scheme. (Indict. at 9.)

In furtherance of the conspiracy, on May 17, 2007, Defendants went in full uniform to the business of Person # 4. Defendants entered the business, and Defendant Gennarini stated, "This is the way we are going to do business in Shenandoah!" Defendants took Person # 4 into custody and demanded money from him. (Indict. at 9.) Defendants placed Person # 4 in a holding cell and threatened formal arrest unless Person # 5 produced $2,000 in cash to Defendants. Defendant Nestor took the cash from Person # 5 after Person # 5 took the money from his savings account. Defendants wrote vague and misleading entries into the police department logbook regarding the arrest and detention of Person # 4. (Indict. at 10.)

On May 17, 2007, Defendants Nestor and Gennarini, while acting under color of the laws of Pennsylvania, conspired to wrongfully seize the property of Person # 5, depriving her of rights and privileges under the Constitution, specifically the right to be free from an unreasonable seizure. It was part of the manner, means, and object of the conspiracy that Defendants Nestor and Gennarini entered into a scheme to unlawfully seize $2,000 in cash from Person # 5. Defendants used their status as law enforcement officers to obtain this property. (Indict. at 12.) In furtherance of the conspiracy, after placing Person # 4 in a holding cell, Defendant Nestor directed Person # 5 to go to the bank to obtain $2,000 cash to free Person # 4 from unlawful detention, and told him that he would be completing the arrest paperwork while he was absent. Defendant Nestor called Person # 5 during this time to find out what as taking so long. Defendants took $2,000 from Person # 5 when he returned to the police station. (Indict. at 13.)

**DISCUSSION**

**I.    MOTION TO DISMISS**

Defendant is charged with five substantive counts of extortion under the Hobbs Act, 18 U.S.C. §1951, and two counts of conspiracy under this act. Defendant moves to dismiss all Hobbs Act charges because the indictment fails to allege that Defendant interfered with interstate commerce. Under the Hobbs Act, there is criminal liable for:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section . . . .

18 U.S.C. §1951(a). The element "affects commerce or the movement of any article or commodity in commerce" provides federal jurisdiction over crimes proscribed by this statute. Defendant claims that the indictment fails to allege this crucial element and therefore, all counts relating to the Hobbs Act must be dismissed.

Rule 7(c)(1) requires an indictment to contain "a plain, concise, and written statement of the essential facts constituting the offense charged" and a statement of which statutes the defendant is alleged to have violated. Fed. R. Crim. P. 7(c)(1). Under Federal Rule of Criminal Procedure 12(b)(3)(B), motions claiming a defect in the indictment must be raised prior to trial. In ruling on a Rule 12(b)(3)(B) motion to dismiss, the court's role is not to determine the sufficiency of the evidence, but to determine whether the allegations in the indictment are sufficient to charge the named offense. *See United States v. DeLaurentis,* 230 F.3d 659, 661 (3d Cir. 2000) (citing *United States v. Sampson,* 371 U.S. 75, 78-79 (1962)). The trial court should consider only those objections "that are capable of determination without the trial of the general issue." *United States v. Carlos Alberto Diaz-*

*Gomez*, No. CRIM. 88-484-1, 2000 WL 1868394, at *3 (E.D. Pa. 2000) (quoting *United States v. Donsky*, 825 F.2d 746, 751 (3d Cir. 1987)). Because a motion to dismiss should not be decided based on the weight of the evidence, the allegations in the indictment are assumed to be true. *See Diaz-Gomez*, 2000 WL 1868394, at * 3.

To determine the sufficiency of an indictment, courts utilize a two part test: (1) "whether the indictment contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet, and (2) enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Oliver*, No. 01-3223, 2002 WL 31474532, at *1 (3d Cir. 2002) (quoting *United States v. Hodge*, 211 F.3d 74, 76 (3d Cir. 2000)). "No greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." *United States v. Bryant*, 556 F.Supp.2d 378, 383 - 84 (D. N.J. 2008) (quoting *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007)). In reviewing an indictment, a court should use "common sense" to determine "whether [a defendant's] conduct, as charged 'reflect[s] a proper interpretation of criminal activity under the relevant criminal statute.'" *Id.* at 384 (quoting *Hodge*, 211 F.3d at 76; *United States v. Delle Donna*, 552 F.Supp.2d 475, 483 (D. N.J. 2008)).

Each count of Defendant's indictment tracks the language of the applicable statute under which he is charged. Defendant claims that the indictment does not adequately allege an impact on interstate commerce. Each count in the indictment which deals with the Hobbs Act alleges that Defendant "did attempt to obstruct, delay, and affect, in any way and degree commerce and the movement of articles and commodities in commerce." This alone is

6

sufficient to allege a violation of the Hobbs Act. While Defendant contends that further factual specificity as to how interstate commerce was or could have been violated is required, Courts have consistently held the contrary. *See United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (citations omitted) (noting that the Fifth and Sixth Circuit Courts of Appeal had also held that a conclusory allegation absent any factual specificity as to the affect on interstate commerce is sufficient to sustain an indictment). The indictment alleges the approximate dates during which Defendant's conspiracy and alleged illegal actions took place. It alleges the locations in which Defendant partook in the alleged illegal actions. It alleges others who were involved and specific actions that Defendant took to further his conspiracy to violate the Hobbs Act. This is sufficient to put Defendant on notice as to what specific conduct is at issue and to prevent double jeopardy from occurring. Therefore, Defendant's motion will be denied.

## II.    MOTION FOR BILL OF PARTICULARS

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the trial court may direct the filing of a bill of particulars. The decision to grant a bill of particulars lies within the discretion of the trial court. *See United States v. Armocida,* 515 F.2d 49, 54 (3d Cir. 1975), *cert. denied* 423 U.S. 858, 96 S.Ct. 111 (1975). The Third Circuit Court of Appeals has explained that "[t]he purpose of a bill of particulars is 'to inform the defendant of the nature of the charges brought against him, to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense.'" *United States v. Urban*, 404 F.3d 754, 771 (3d Cir. 2005) (quoting *United States v. Addonizio*, 451 F.2d 49, 63-64 (3d Cir. 1972)).

Although the Federal Rules of Criminal Procedure have been amended in order to "encourage a more liberal attitude by the courts toward bills of particulars," *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989) (quoting Fed. R. Crim. P. advisory cmte. notes to 1966 amendments), as a practical matter, when deciding whether to direct the government to file a bill of particulars the Court must assess whether the indictment fails "to provide factual or legal information," and whether that failure "significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *Rosa*, 891 F.2d at 1066.

A bill of particulars is also designed to limit and define the government's case. *See United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985). "As with an indictment, there can be no variance between the notice given in a bill of particulars and the evidence at trial." *Id.* Thus, the court must balance the defendant's need to know evidentiary-type facts in order to adequately prepare a defense with the government's need to avoid prematurely disclosing evidentiary matters to the extent that it will be unduly confined in presenting its evidence at trial. *See United States v. Deerfield Specialty Papers, Inc.,* 501 F. Supp. 796, 809 (E.D. Pa. 1980). The defendant is not entitled to wholesale discovery of the government's evidence, nor to a list of the government's prospective witnesses. *Addonizio,* 451 F.2d at 64. Nor is a bill of particulars a vehicle to compel disclosure of the details of the government's theory of the case. *United States v. Tedesco*, 441 F. Supp. 1336, 1343 (M.D. Pa. 1977).

The Third Circuit Court of Appeals has emphasized that the need for a bill of particulars is obviated in cases where the Government supplements a detailed charging document with substantial discovery, *Urban*, 404 F.3d at 772, and that bills of particulars are

"not intended to provide the defendant with the fruits of the government investigation." *Smith*, 776 F.2d at 1111 (citations omitted). Instead, unlike discovery, a bill of particulars is intended to give the defendant only "that minimum amount of information necessary to permit the defendant to conduct his *own* investigation," and not to provide the defendant with the fruit of the government's investigation. *Id.* (emphasis in original).

### A. Request Number One

The indictment makes multiple references to unnamed individuals. These individuals include Participant # 1, Participant # 2, Person # 1, Person # 2, Person # 3, Person # 4, and Person # 5. Defendant requests the identities of these individuals. As noted above, Defendant is not entitled to the list of the Government's witnesses. Persons # 1, # 2, # 3, # 4, and # 5 appear to be no more than witnesses or victims in this case. Therefore, the request for their identities will be denied. Participants # 1 and # 2, however, appear to be something more than witnesses in this matter. While these individuals are not alleged to be co-conspirators in Defendant's scheme, it is clear from the indictment that they were, at the very least, intricately involved in the conspiracy. They are alleged to have committed overt acts in furtherance of the conspiracy and to have participated in the conspiracy at Defendant's orders. They are alleged to have performed actions that were necessary for the conspiracy to succeed. Upon reading the indictment, it appears that these individuals were at the very heart of the conspiracy.

In determining whether to order disclosure of co-conspirators' identities, there are three interests at play: Defendant's interest in adequately preparing a defense and avoiding unfair surprise at trial, the Government's interest in adequately preparing its case for trial, and the privacy interests of the alleged co-conspirators. Disclosure of the names of co-

9

conspirators whom the Government intends to call as witnesses at trial strikes the proper balance when weighing these interests. *MacFarlane*, 759 F.Supp. At 1169 - 70 (citing *United States v. Barrentine*, 591 F.2d 1069 (5th Cir. 1979)); *United States v. Degrasse*, 2003 WL 23277264, 1 (D. V.I. 2003); *Morris*, 2008 WL 5188826 at 1 (finding that because the court should only prevent unfair surprise for the defendant at trial, not limit the government's proof, disclosure of only those witnesses which the government intends to call at trial is appropriate). While the Government is not required to disclose the names of all those it intends to call a witnesses, these "participants" appear from the indictment to be more than ordinary witnesses: they are central to the indictment, and they are central to the conspiracy with which Defendant is charged. These individuals come close enough to being alleged as co-conspirators that they fall within this rationale for providing a bill of particulars. Without knowledge of the identities of these individuals, it is unlikely that Defendant will be able to adequately prepare a defense for trial without the danger or prejudicial surprise. Therefore, Defendant's request for the identities of Participant # 1 and Participant # 2 will be granted.

### B.     Request Number Two

Various counts of the indictment allege that Defendant affected and conspired to affect interstate commerce. Defendant requests that the Government disclose specifically what affect Defendant's actions had on interstate commerce. Under the Hobb's Act is it not necessary for a defendant to actually affect interstate commerce; it is sufficient that a defendant merely *attempts* to affect interstate commerce. *See* 18 U.S.C. §1951. Therefore, it is unnecessary for the Government to allege a specific affect on interstate commerce in the indictment. It appears that Defendant is searching for the Government's theory as to how interstate commerce could have been or was violated. To this, the Defendant is not

10

entitled. While the indictment does not provide any specific factual detail as to the effect or potential effect on interstate commerce, it is unnecessary at this stage of the proceeding. Furthermore, in its brief in opposition to this motion, the Government divulges additional facts regarding the Defendant's effect on commerce and provides information as to its theory as to how commerce was or could be affected. To this extent, Defendant is referred to the Government's brief in opposition (Doc. 67.) Defendant's request will be otherwise denied.

### III.     MOTION TO PRODUCE GRAND JURY MINUTES

Courts do not allow inspection of Grand Jury minutes based on conjecture or unsupported accusations; factual support is required to inspect Grand Jury proceedings which are protected by a "strong presumption of regularity." *United States v. Bunty*, 617 F.Supp.2d 359, 372 (E.D. Pa. 2008) (citing *United States v. Shane*, 584 F.Supp. 364, 367 (E.D. Pa. 1984); *United States v. Nguyen*, 314 F.Supp.2d 612, 615 (E.D. Va. 2004)). In order to warrant even an *in camera* inspection of Grand Jury minutes, a defendant must show "particularized and factually based grounds . . . to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment." *Id.* (quoting *Nguyen*, 314 F.Supp.2d at 616).

Defendant claims that he requires the Grand Jury minutes in this case in order to discover precisely what commerce the indictment alleges that he affected or intended to affect. Defendant raised this precise issue in his motion to dismiss and motion for bill of particulars and is making another attempt to obtain information to which he is not entitled. As discussed, a criminal defendant is not entitled to discovery; he is not entitled to the Government's theory of the case. Defendant has shown no particularized need in this case other than the need to know the Government's theory as to how he affected interstate

11

commerce. The Government recognizes its duty to hand over Grand Jury minutes as part of the *Jencks* Act and claims that it will turn this material over three days prior to trial. *Jencks* does not mandate turnover until the day that a witness intends to take the stand, and therefore, the Government's schedule is sufficient. *See United States v. D'Elia*, No. 3:CR-06-191, 2007 WL2458487, *7 (M.D. Pa. 2007) (citing *United States v. Murphy*, 569 F.2d 771, 773 (3d Cir. 1978). Defendant's motion will be denied.

## IV.     MOTION FOR *BRADY* MATERIALS

There is no constitutional right to discovery in a criminal case. *United States v. Mariani*, 7 F.Supp.2d 556, 561 (M.D. Pa. 1998) (Vanaskie, J.) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)). However, some evidence, courts have reasoned, must be disclosed to protect defendants' due process rights. For instance, evidence which is both exculpatory and material must be disclosed by the government. *Id.* (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *United States v. Higgs*, 713 F.2d 39, 42 (3d Cir. 1983)). Exculpatory evidence is evidence which "goes to the heart of the defendant's guilt or innocence as well as that which might alter the jury's judgment of the credibility of a crucial prosecution witness." *Giglio v. United States*, 405 U.S. 150, 154 (1972). Exculpatory evidence should be found to be material if it raises reasonable doubt as to the defendant's guilt. *United States v. Agurs*, 427 U.S. 97, 112 (1976). It is within the discretion of the trial court to order pretrial disclosure of *Brady* and *Giglio* material. *Higgs*, 713 F.2d at 44 n.6.

*Brady* did not create a right to discovery; it placed a duty upon prosecutors to disclose material that is both exculpatory and material. *United States v. Rodriguez*, Criminal Action No. 07-709-01, 2008 WL 4925010, *2 - 3 (E.D. Pa. 2008) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Bagley*, 473 U.S. 667, 682 (1985)). When a

Defendant merely makes a general *Brady* request, it is in the Government's discretion whether to disclose its information. *Id.* (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987)). To obtain even an *in camera* inspection of evidence, a defendant must allege that the prosecution has withheld *Brady* evidence and "must at least make a 'plausible showing' that the inspection will reveal material evidence." *Id.* (quoting *Ritchie*, 480 U.S. at 59 - 60); *see also United States v. Dent* 149 F.3d 180, 191 (3d Cir. 1998); *Riley v. Taylor*, 277 F.3d 261, 301 (3d Cir. 2001).

Defendant seeks impeachment evidence falling under the Supreme Court's *Giglio* decision. While this evidence must be turned over prior to trial, this motion is premature. Impeachment evidence may be disclosed to the defense as late as the day that the witness will testify in court. *United States v. Higgs*, 713 F.2d 39, 44 (1983). The Government claims that it intends to turn this information over to the defense three days prior to trial. This schedule is sufficient, and therefore, Defendant's motion for disclosure of impeachment evidence will be denied.

## V.     MOTION TO PRECLUDE CERTAIN DEFENSE

The Government seeks to prevent Defendants from raising a claim of right defense to Hobbs Act extortion at trial. The Supreme Court has recognized a claim of right defense to Hobbs Act extortion. *See United States v. Tobin*, 155 F.3d 636, 640 (3d Cir. 1998) (citing *United States v. Enmons*, 410 U.S. 396 (1973)). The Third Circuit Court of Appeals originally limited application of this defense to cases involving labor-management conflicts, like that that arose in *Enmons*. *Id.* (citing *United States v. Agnes*, 753 F.2d 293, 297-99 (3d Cir. 1985); *United States v. Cerilli*, 603 F.2d 415 (3d Cir. 1979)). This limitation has been expanded, however, to allow claim of right defense to Hobbs Act extortion in non labor

cases. *Id.* (citing *Brokerage Concepts, Inc. v. United States Healthcare, Inc.*, 140 F.3d 494 (3d Cir. 1998)). A claim of right defense to Hobbs Act extortion can now be raised in any case as long as the threatened harm is purely economic. *Id.*

The Government claims that Person # 4 owned a car dealership in Shenandoah, Pennsylvania. In 2007, Gennarini went to the dealership to sell his Jeep Wrangler. The vehicle had a "reconstructed" title, but Gennarini approached Person # 4 to obtain an illegal "clear" title. Person # 4 refused but agreed to attempt to sell the Jeep from his lot. Nestor left his vehicle at the lot and transferred the title to Person # 4. Person # 4 found a buyer for the Jeep. Gennarini agreed to sell the vehicle but asked to be paid quickly. In response, Person # 4 gave Gennarini a check but asked that he not cash it until payment for the vehicle was received. The deal to sell the vehicle fell through, but Gennarini cashed the check anyway; the check bounced.

Gennarini demanded money for the vehicle, despite the fact that it did not sell, and Person # 4 paid him $1,030 in cash. On May 7, 2007, Gennarini approached the State Police regarding the bad check. He told them that he was not interested in prosecution and that he just wanted his money back, and the State Police opened an investigation. On May 16, 2007, the extortion scheme described above occurred; Defendants arrested Person # 4 and used threat of prosecution to force Person # 5 to pay Gennarini $2,000 in cash. Nestor told Person # 5 to go to the bank to withdraw money or he would not release Person # 4 from prison. He told Person # 5 that he would be drawing up the arrest paperwork while he was on the way to the bank. Soon, Person # 5 returned with the money. Person # 4 was never charged with a crime. Nestor indicated in the arrest record that there was an investigation into the use of bad checks but proceeded to write "VOID" because restitution

14

was made to the victim. Person # 4, having been forced to buy the Jeep, gave it to his son in Florida. The Pennsylvania State Police eventually contacted Gennarini, and he told them that he had been paid. He did not indicate how or why.

Defendants claim that a different version of these events actually occurred. Nestor claims that a criminal complaint was being prepared against Donald Rinaldi (Person # 4) for writing an insufficient check. The criminal complaint charged Rinaldi with theft by deception and issuing an insufficient fund check under the Pennsylvania State Code. Nestor prepared an affidavit of probable cause on the day of Rinaldi's arrest. The affidavit claims that when Defendant Gennarini first went to Rinaldi's dealership, Rinaldi agreed to buy the Jeep from him and gave him a check for $3,000. The check was then denied for insufficient funds. Gennarini then approached Rinaldi, who gave him $1,010 cash and would soon pay him the remaining $2,000. Rinaldi then refused on multiple occasions to pay back the remaining $2,000.

Gennarini approached the State Police, but before they made an arrest, Nestor and Gennarini arrested Person # 4 and began to finalize a criminal complaint and arrest report. Defendants claim that Rinaldi had a long history of issuing bad checks and asked to make restitution. Rinaldi called his girlfriend (Person # 5) and asked her to get the money to make restitution. Restitution was soon made. Defendants indicated on the record that an arrest was made but no charges were filed because restitution was made.

Based on these sets of facts, Defendants cannot raise a cognizable claim of right defense in this case. The threatened harm in this case was not economic. Nestor allegedly locked Person # 4 in prison and threatened him with unlawful arrest unless Person # 5 gave him $2,000. The rationale behind the application of a claim of right defense is that it may be

15

applied in cases of threat of economic harm because the victim does not have a right to be free from threats of economic harm. The exact opposite is true in this case. Defendants threatened to arrest Person # 4, a threat to his liberty.

Defendants claim that Nestor had probable cause to arrest Person # 4 and therefore, that Person # 4 did not have a right to be free from threat of arrest. Defendants claim that because of this, the rationale for allowing a claim of right defense in cases only where economic harm is threatened should be extended. However, the dominant rationale behind allowing the defense is that threat of economic harm is a staple of day to day business and bargaining transactions. It is not something that is facially illegal. An officer, threatening an arrest to acquire money owed to him, is not such a common or necessary transaction in our society. Therefore, because it was not economic harm that was threatened in this case, Defendants will be precluded from raising a claim of right defense.

The Government also seeks to exclude all evidence relating to a claim of right defense in this case. While Defendants are precluded from raising this defense, this Court cannot say that all evidence relating to this claim must be excluded. Defendants could argue that they cannot be found guilty under the Hobbs Act because they were not committing extortion, but instead were effectuating a legal arrest which was halted when restitution was made to the victim. Evidence of the debt and the circumstances leading up to that arrest could be relevant to that defense and thus need not be excluded. Specifically, evidence of the debt and the circumstances leading up the arrest could be relevant to intent, an element of the charges levied against Defendants. Gennarini's relationship and business transactions with Person # 4 could be relevant to his frame of mind at the time of the incident and his alleged attempt to extort money from Person # 4. The details of the business

16

transaction will likely be necessary for the jury to determine whether or not Defendants were extorting Person # 4 or simply making a lawful arrest which was halted when restitution was made to the victim. At this point in time, I cannot evaluate this evidence in a vacuum and determine its relevance. Should I exclude this evidence now, Defendants may be prevented from presenting evidence relevant to an element of the offense charged. Therefore, the Government's motion will be granted in part and denied in part.

## CONCLUSION

For the reasons stated above, Defendant Nestor's motions will be granted in part and denied in part, and the Government's motion will be granted in part and denied in part.

| | |
|---|---|
|  August 11, 2010  <br> Date |  /s/ A. Richard Caputo  <br> A. Richard Caputo <br> United States District Judge |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

MATTHEW NESTOR, and
JAMIE GENNARINI,

   Defendant.

NO. 3:09-CR-398

(JUDGE CAPUTO)

## ORDER

**NOW**, this  11th  day of August, 2010, **IT IS HEREBY ORDERED** that:

1. Defendant's motion to dismiss (Doc. 51) is **DENIED**.

2. Defendant's motion for bill of particulars (Doc. 52) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   (A) The Government is ordered to disclose the identities of Participant # 1 and Participant # 2.

   (B) All other requests for particulars are **DENIED**.

3. Defendant's motion for Grand Jury minutes (Doc. 55) is **DENIED**.

4. Defendant's motion for *Brady* material (Doc. 57) is **DENIED**.

5. The Government's motion to preclude certain defense (Doc. 63) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   (A) The Government's request to preclude Defendants from raising a claim of right defense is **GRANTED**.

   (B) The Government's request to preclude Defendants from presenting evidence of his right to the allegedly extorted money is **DENIED**.

6. The Government's motion to preclude certain defense (Doc. 64) is **DENIED AS MOOT**.

                                        /s/ A. Richard Caputo  
                                        A. Richard Caputo  
                                        United States District Judge